## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ARRIVE NOLA HOTEL, LLC** | **CIVIL ACTION** |
| **VERSUS** | **CASE NO. 24-1585** |
| **CERTAIN UNDERWRITERS AT LLOYDS, LONDON, ET AL.** | **SECTION: "G"(3)** |

### ORDER AND REASONS

Before the Court is Defendants Certain Underwriters at Lloyd's, London, subscribing to Certificate No. AMR-73287, Indian Harbor Insurance Company, QBE Specialty Insurance Company, Steadfast Insurance Company, General Security Indemnity of Arizona, United Specialty Insurance Company, Lexington Insurance Company, HDI Global Specialty SE, Old Republic Union Insurance Company, GeoVera Specialty Insurance Company, and Transverse Specialty Insurance Company's (collectively, "Defendants") Motion to Compel Arbitration and Stay Proceedings.[1] In the motion, Defendants seek to compel Plaintiff Arrive NOLA Hotel ("Plaintiff") to arbitrate all claims in this litigation pursuant to 9 U.S.C. § 206 and to stay the litigation pending arbitration pursuant to 9 U.S.C. §§ 3, 208.[2] Plaintiff opposes the motion.[3] Having considered the motion, the memoranda in support and in opposition, the record, and the applicable law, this Court grants the motion to compel arbitration as to both the foreign and domestic insurers involved and grants the motion to stay proceedings pending arbitration.

---

[1] Rec. Doc. 6.

[2] *Id*. at 1.

[3] Rec. Doc. 14.

## I. Background

This litigation arises from alleged property damage to Plaintiff's property located at 600 Mazant Street, New Orleans, LA 70117, resulting from a fire that occurred on December 27, 2022.[4] Plaintiff filed a petition for damages against Defendants in the Civil District Court for the Parish of Orleans on June 19, 2024.[5] Plaintiff avers that the property was insured by Defendants at the time of the fire.[6] Plaintiff submits that Defendants received satisfactory proof of loss following an inspection of the property.[7] Plaintiff was then paid insurance proceeds totaling $1,869,058.28.[8] Plaintiff contends that Defendants have not paid the remaining amount reflected in the satisfactory proof of loss and, thus, have failed to tender the full amount due.[9]

On June 19, 2024, Defendants removed the action to this Court, asserting subject matter jurisdiction based on a federal question under 28 U.S.C. §§ 1441 and 1446.[10] In the Notice of Removal, Defendants argue that removal is proper because of a valid arbitration provision in the Policy, which falls under the Convention Act.[11] "Congress promulgated the Convention Act in 1970 to establish procedures for our courts to implement" the Convention on the Recognition and Enforcement of Foreign Arbitral Award (the "Convention").[12] The Convention is an international

---

[4] Rec. Doc. 1-1 at 4.

[5] *Id*. at 1.

[6] *Id*. at 3–4.

[7] *Id*. at 5.

[8] *Id*.

[9] *Id*.

[10] Rec. Doc. 1 at 2.

[11] *Id*.

[12] *McDermott Int'l., Inc. v. Lloyds Underwriters of London*, 944 F.2d 1199, 1208 (5th Cir. 1991).

treaty, ratified by Congress in 1970, which seeks to "encourage the recognition and enforcement of commercial arbitration agreements in international contracts and to unify the standard by which the agreements to arbitrate are observed, and arbitral awards are enforced in signatory countries."[13] In the Notice of Removal, Defendants aver that because certain Defendants are citizens of countries other than the United States this Court has original jurisdiction under the Convention.[14]

On June 25, 2024, Defendants filed the instant Motion to Compel Arbitration and Stay Proceedings.[15] On July 24, 2024, Plaintiff opposed the Motion to Compel Arbitration and Stay Proceedings.[16] On July 29, 2024, Defendants filed a Reply.[17] On November 6, 2024, Plaintiff filed a Supplemental Brief.[18] On November 13, 2024, Defendants filed a Supplemental Brief.[19] Three more Supplemental Briefs were filed by Defendants on December 6, 2024,[20] January 17, 2025,[21] and March 11, 2025,[22] respectively.

---

[13] *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 520 n.15 (1974).

[14] Specifically, HDI is a foreign corporation with its principal place of business in Germany. The Lloyd's Underwriters are also principally citizens of countries other than the United States.

[15] Rec. Doc. 6.

[16] Rec. Doc. 14.

[17] Rec. Doc. 16.

[18] Rec. Doc. 27.

[19] Rec. Doc. 30.

[20] Rec. Doc. 34.

[21] Rec. Doc. 38.

[22] Rec. Doc. 45.

## II. Parties' Arguments

### A.   Defendants' Arguments in Support of the Motion to Compel Arbitration

In support of the Motion to Compel Arbitration and Stay Proceedings, Defendants first argue that all four requirements for a court to compel arbitration under the Convention are satisfied.[23] Defendants argue the first criteria, whether there is a written agreement to arbitrate the matter, is met because "[a]n arbitration clause contained in an insurance policy constitutes an enforceable written agreement to arbitrate."[24] Defendants assert that the second criteria, whether the agreement provides for arbitration in a Convention signatory nation, is satisfied because the Policy provides for arbitration in the United States, which ratified the Convention in 1970.[25] Defendants contend that the third criteria, whether the arbitration agreement arises from a commercial legal relationship, is satisfied because "[t]his Court has held that an arbitration clause in an insurance agreement satisfies the requirement that the arbitration agreement arises from a commercial legal relationship."[26] Finally, Defendants aver that the fourth criteria, whether at least one of the parties to the agreement is not a citizen of the United States, is satisfied because multiple underwriters of the Policy are principally citizens of the United Kingdom.[27] Defendants conclude,

---

[23] Rec. Doc. 6-1 at 6.

[24] *Id*. (citing *McDonnel Grp., L.L.C. v. Great Lakes Ins. Se*, 923 F.3d 427, 432 n.8 (5th Cir. 2019); *Sphere Drake Ins. PLC v. Marine Towing*, 16 F.3d 666, 670 (5th Cir. 1994); *Georgetown Home Owners Ass'n v. Certain Underwriters at Lloyds*, No. CV 20-102-JWD-SDJ, 2021 WL 359735, at *12–13 (M.D. La. February 2, 2021); *Lag Oasis, LLC v. Independent Specialty Insurance Co. et al.*, No. CV 236584, 2024 WL 2977871, at *5 (E.D. La. June 13, 2024); *Franco's Ath. Club LLC v. Davis*, No. 21-1647, 2022 WL 229343, at *3 (E.D. La. Jan. 26, 2022)).

[25] *Id*. at 6–7.

[26] *Id*. at 7 (citing *Harvey v. Certain Underwriters at Lloyd's, London*, No. 22-4049, 2023 WL 4485083, at *2 (E.D. La. June 6, 2023); *City of Kenner v. Certain Underwriters at Lloyd's London*, No. CV 22-2167, 2022 WL 16961130, at *2 (E.D. La. Nov. 16, 2022); *Gulledge v. Certain Underwriters at Lloyd's, London*, No. 18-6657, 2018 WL 4627387, at *2 (E.D. La. Sept. 26, 2018); *Viator v. Dauterive Contractors, Inc.*, 638 F.Supp.2d 641, 646 (E.D. La. 2009)).

[27] *Id*.

because these four requirements are satisfied, the Convention requires that the Court compel arbitration absent a finding that the agreement is "null and void, inoperative or incapable of being performed."[28]

Second, Defendants argue that the "null and void exception" is very narrow and does not apply to the instant arbitration provision because there is no evidence of fraud, duress, or mistake.[29] Defendants further argue that the Policy's arbitration provision "contains a broad delegation clause that requires that the Arbitration Panel, not the Court, resolve all questions regarding whether specific issues fall within the scope of the Arbitration Clause."[30] Defendants assert the Fifth Circuit has held that if an arbitration agreement contains a delegation clause, "the motion to compel should be granted in almost all cases."[31] Thus, Defendants conclude, because the delegation clause in question is broad, encompassing "all matters of difference," it "includes all contractual and statutory disputes, including bad faith claims."[32]

Third, Defendants argue "Plaintiff is equitably estopped from objecting to the arbitration [because] all insurers have acted in concert in evaluating and adjusting Plaintiff's insurance claims."[33] Defendants assert another section of this Court held, in a case involving the same type of arbitration clause, the plaintiff was equitably estopped from avoiding arbitration where it "alleged interdependent and concerted misconduct."[34] Defendants conclude that, "where a plaintiff

---

[28] *Id.* at 8 (quoting *Freudensprung v. Offshore Tech. Servs.*, 379 F.3d 327, 339 (5th Cir. 2004)).

[29] *Id.* at 9 (quoting *Johnson v. NCL (Bah.) Ltd.*, 163 F.Supp.3d 338, 361 (E.D. La. 2016)).

[30] *Id.*

[31] *Id.* (quoting *Kubala v. Supreme Prod. Sers.*, 830 F.3d 199, 202 (5th Cir. 2016)).

[32] *Id.* at 10.

[33] *Id.* at 10–11 (quoting *Grigson v. Creative Artists Agency, L.L.C.*, 210 F.3d 524, 527 (5th Cir. 2000)).

[34] *Id.* at 11.

fails to differentiate between the alleged actions of any defendant insurer, the claims against the defendant insurers are considered to be concerted and interdependent," and so the doctrine of equitable estoppel applies.[35]

Fourth, Defendants argue Louisiana law does not prevent the enforcement of the arbitration clause.[36] Defendants assert the Fifth Circuit has made clear that the Convention supersedes state law.[37] Thus, Defendants conclude that the Court should grant the Motion to Compel Arbitration and Stay Proceedings.[38]

**B.    *Plaintiff's Arguments in Opposition to the Motion to Compel Arbitration***

In opposition to Defendants' Motion to Compel Arbitration and Stay Proceedings, Plaintiff advances three arguments. First, Plaintiff argues the arbitration agreement is invalid because "Plaintiff did not and could not have consented to Arbitration."[39] Plaintiff asserts "[i]t is undisputed that the Policy was effective on March 5, 2021. However, the Policy was sent on March 24, 2021, to Plaintiff's Broker."[40] Plaintiff concludes that mutual consent was not freely given, rendering the arbitration agreement invalid.[41]

Second, Plaintiff asserts the arbitration agreement is void under Louisiana Revised Statute § 22:868, which prohibits arbitration provisions in surplus lines insurance contracts.[42] In support

---

[35] *Id.* at 12.

[36] *See id.* at 16.

[37] *Id.* (citation omitted).

[38] *Id.* at 17.

[39] Rec. Doc. 14 at 5.

[40] *Id.* at 4.

[41] *See id.* at 4–5.

[42] *Id.* at 5.

of this contention, Plaintiff relies on *S. K. A. V., L.L.C. v. Indep. Specialty Ins. Co.*,[43] in which the Fifth Circuit held, "[w]hen a statute prevents the valid formation of an arbitration agreement, as we read § 22:868 to do, we cannot compel arbitration, even on threshold questions of arbitrability."[44]

Third, Plaintiff argues the arbitration agreement is a contract of adhesion because the arbitration clause was concealed in the 127-page long Policy and Defendants had superior bargaining strength.[45] Therefore, Plaintiff concludes the agreement is unenforceable.[46]

Plaintiff additionally filed a Supplemental Brief,[47] where it argues the recent Louisiana Supreme Court ruling in *Police Jury of Calcasieu Parish v. Indian Harbor Insurance Company*[48] makes it improper to compel arbitration under the Convention as to the domestic insurers.[49] In *Police Jury*, Plaintiff contends the Louisiana Supreme Court held that domestic insurers cannot rely on equitable estoppel principles to compel arbitration under a foreign insurer's policy.[50] Plaintiff cites the clause in the insurance policy providing the contract "shall be constructed as a separate contract between the Insured and each of the Underwriters."[51] Thus, Plaintiff asserts that domestic insurers are prohibited from "piggybacking" on foreign insurer's ability to compel

---

[43] 103 F.4th 1121 (5th Cir. 2024).

[44] Rec. Doc. 14 at 6 (citing *S. K. A. V., L.L.C.*, 103 F.4th at 1125).

[45] *Id*. at 8–9.

[46] *Id*.

[47] Rec. Doc. 27.

[48] 2024-00449 (La. 10/25/24), 395 So.3d 717.

[49] Rec. Doc. 27.

[50] *Id*. at 2.

[51] *Id*. at 3.

arbitration, and domestic insurers are subject to Louisiana law, which prohibits compelled arbitration.[52]

## C.    *Defendants' Arguments in Further Support of the Motion*

In reply, Defendants argue Plaintiff was aware of and consented to the arbitration clause.[53] Defendants assert Plaintiff's opposition is based entirely on the alleged time gap between the Policy's effective date on March 5, 2021, and Plaintiff's receipt of it on March 25, 2021.[54] Defendants aver, because Plaintiff received the Policy twenty-one months before the date of loss and later renewed it on June 5, 2022, Plaintiff is legally presumed to have read, understood, and accepted the terms of the contract.[55] Defendants assert "Plaintiff could have walked away from the Policy and pursued different terms of coverage elsewhere."[56]

Next, Defendants argue that Louisiana law does not void the arbitration agreement under the Convention,[57] and that the Fifth Circuit's decision in *S. K. A. V., L.L.C.*, relied on by Plaintiff, is irrelevant.[58] Defendants argue *S. K. A. V., L.L.C.* applies only to cases involving domestic insurers seeking to proceed under La. R.S. 22:868(D), whereas this case arises under the

---

[52] *Id.* at 4.

[53] Rec. Doc. 16 at 2.

[54] *Id*. at 3.

[55] *Id*.

[56] *Id*. (citing *Bopp v. Indep. Specialty Ins. Co.*, 657 F.Supp.3d 859, 866 (E.D. La. 2023)).

[57] *See id*. at 4.

[58] Rec. Doc. 16 at 4.

Convention.[59] Defendants conclude when foreign insurers are involved, the Convention preempts state law.[60]

Defendants also assert that the arbitration clause is not a contract of adhesion, noting that courts have frequently addressed the argument that arbitration clauses in insurance contracts are adhesionary.[61] Defendants urge that Plaintiff has not shown any imbalance of bargaining power.[62]

Defendants responded to Plaintiff's supplemental brief, which argued that *Police Jury* disallowed all domestic insurers from compelling arbitration. In Defendants' supplemental brief,[63] they argue *Police Jury* is inapplicable to this case because it involved *only* domestic insurers, and so did not fall under the Convention.[64] According to Defendants, failing to abide by the Convention in this case would go against the Convention's very purpose, which is to operate as the law of the land and promote uniformity.[65]

Defendants additionally filed a Supplemental Response to Plaintiff's Supplemental Opposition Brief.[66] Within, Defendants contend that if this Court does not grant Defendants' Motion to Compel Arbitration as to all Defendants, the Court should stay the action as to the domestic Defendants.[67] Defendants argue the stay is mandatory according to the Federal

---

[59] *Id*. at 6.

[60] *Id*.

[61] *Id*. (citing *Edenborn Off. Owners Condo. Ass'n v. Certain Underwriters at Lloyd's London*, No. CV 23-3546, 2023 WL 8258129, at *5 (E.D. La. 2023)).

[62] *Id*. at 8.

[63] Rec. Doc. 30.

[64] *Id*. at 1–2.

[65] *Id*. at 3–10.

[66] Rec. Doc. 34.

[67] *Id*. at 1.

Arbitration Act ("FAA") when a party demonstrates any issue involved in the lawsuit is referable to arbitration based on a written agreement.[68] Defendants go on to argue if this Court finds the claims of the domestic carriers are not arbitrable, this Court should grant a stay of all nonarbitrable claims.[69]

Defendants filed a second Supplemental Memorandum in Support of Motion to Compel Arbitration.[70] Within, Defendants contend *Bufkin Enterprises v. Indian Harbor Insurance* controls,[71] and not *Police Jury*.[72] Defendants argue, when foreign insurers are involved in an agreement between parties, *Bufkin* instructs courts to apply federal equitable estoppel principles under the Convention.[73] Defendants maintain the Supreme Court has held state law should not be permitted to undermine the Convention when applying the two-part test from *Boyle v. United Technologies Corporation*.[74]

Defendants also filed a third Supplemental Memorandum in Support of Motion to Compel Arbitration.[75] This brief notifies the Court of a March 10, 2025 decision denying a plaintiff's Motion to Lift Stay and Vacate Arbitration Order in a case pending before another Section of the Eastern District of Louisiana.[76]

---

[68] *Id.* (citations omitted).

[69] *Id.* at 2–7 (citing *Waste Mgmt., Inc. v. Residuous Industriales Muliquim, S.A. de C.V.*, 372 F.3d 336, 343 (5th Cir. 2004)).

[70] Rec. Doc. 38.

[71] 96 F.4th 729 (5th Cir. 2024).

[72] Rec. Doc. 38 at 1.

[73] *Id.*

[74] *Id.* at 2 (citing *Boyle v. United Tech. Corp.*, 487 U.S. 500, 506–07 (1988)).

[75] Rec. Doc. 45-1.

[76] *Parish of Lafourche v. Indian Harbor Insurance Company*, E.D. La Case. No. 23-3472.

### III. Legal Standard

Agreements arising under the Convention are subject to the provisions of the FAA unless the FAA is in "conflict" with the Convention.[77] The FAA was enacted in order to "allow[] a party to . . . an arbitration agreement to petition any United States district court for an order directing that such arbitration proceed in the manner provided for in such agreement."[78] In *Iberia Credit Bureau, Inc. v. Cingular Wireless*, the Fifth Circuit explained the FAA was "in large part motivated by the goal of eliminating the courts' historic hostility to arbitration agreements."[79] The Fifth Circuit further explained that "Section 2 of the FAA puts arbitration agreements on the same footing as other contracts."[80] This means, "as a matter of federal law, arbitration agreements and clauses are to be enforced unless they are invalid under principles of state law that govern all contracts."[81]

Under the FAA, there is a "strong federal policy in favor of enforcing arbitration agreements."[82] Section 3 of the FAA provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration . . . the court . . . shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . . .[83]

---

[77] *GE Energy Power Conversion France SAS, Corp. v. Outokumpu Stainless USA, LLC*, 590 U.S. 432, 438 (2020).

[78] *Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 474 (1989) (quotation marks omitted).

[79] *Iberia Credit Bureau, Inc. v. Cingular Wireless LLC*, 379 F.3d 159, 166 (5th Cir. 2004)

[80] *Id.*

[81] *Id.*

[82] *Texaco Expl. & Prod. Co. v. AmClyde Engineered Prod. Co.*, 243 F.3d 906, 909 (5th Cir. 2001) (citing *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 217 (1985)).

[83] 9 U.S.C. § 3.

"[I]f the issues in a case are within the reach of that [arbitration] agreement, the district court has no discretion under section 3 to deny the stay."[84]

## IV. Analysis

### A.    Whether there is a Valid Agreement to Arbitrate Plaintiff's Claims Under the Convention

The Convention incorporates the FAA except for the few provisions where the two laws conflict.[85] The Supreme Court has noted the "emphatic federal policy in favor of arbitral dispute resolution," which "applies with special force in the field of international commerce."[86] Thus, the Fifth Circuit has explained, "[i]n determining whether the Convention requires compelling arbitration in a given case, courts conduct only a very limited inquiry."[87] Therefore, absent a finding that the subject "agreement is null and void, inoperative, or incapable of being performed," a court must grant a motion to compel arbitration if the following requirements are met: "'(1) there is a written agreement to arbitrate the matter; (2) the agreement provides for arbitration in a Convention signatory nation; (3) the agreement arises out of a commercial legal relationship; and (4) a party to the agreement is not an American citizen.'"[88]

The first factor is satisfied because the "agreement in writing" consists of an arbitration clause in the insurance policy. The Fifth Circuit, in *Sphere Drake*, held "[a] signature is . . . not

---

[84] *Texaco Expl. & Prod. Co.*, 243 F.3d at 909 (citing *Hornbeck Offshore Corp. v. Coastal Carriers Corp.*, 981 F.2d 752, 754 (5th Cir. 1993)).

[85] *McDermott Int'l., Inc. v. Lloyds Underwriters of London*, 944 F.2d 1199, 1208 (5th Cir. 1991) ("The Convention Act incorporates the FAA except where the FAA conflicts with the Convention Act's few specific provisions.") (citing 9 U.S.C. § 208).

[86] *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985).

[87] *Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 339 (5th Cir. 2004) (citing *Francisco v. STOLT ACHIEVEMENT MT*, 293 F.3d 270, 273 (5th Cir. 2002)).

[88] *Id.* (quoting *Sedco, Inc. v. Petroleos Mexicanos Mexican Nat'l Oil Co.*, 767 F.2d 1140, 1146 (5th Cir. 1985); *Francisco*, 293 F.3d at 273).

required" when an arbitration clause is part of a larger contract.[89] Here, the Policy was in writing and was effective, even if Plaintiff did not specifically sign a copy with the arbitration agreement.

The second element is satisfied because the arbitration clause provides for arbitration in the United States, a signatory nation. The third element is satisfied because an insurance contract constitutes a commercial legal relationship.[90] The fourth element is met because multiple Underwriters are not U.S. citizens.

Therefore, the main dispute is whether the arbitration provision is valid. The Court must compel Plaintiff to arbitrate with the foreign insurers unless the agreement "is null and void, inoperative or incapable of being performed."[91] However, this "null and void" defense, which is set forth in Article II(3) of the Convention, "'limits the bases upon which an international arbitration agreement may be challenged to standard breach-of-contract defenses such as fraud, mistake, and duress.'"[92] In light of the strong presumption favoring arbitration, "'a party seeking to invalidate an arbitration agreement bears the burden of establishing its invalidity.'"[93]

Plaintiff asserts that the arbitration agreement is invalid because there was no "meeting of the minds" between the parties.[94] Plaintiff argues that it did not and could not have consented to the arbitration agreement because, although the Policy became effective on March 5, 2021,

---

[89] *Sphere Drake Ins. PLC v. Marine Towing, Inc.*, 16 F.3d 666, 669 (5th Cir. 1994); *Neptune Shipmanagement Servs. PTE, Ltd. v. Dahiya*, 15 F.4th 630, 638 (5th Cir. 2021) ("Fifth Circuit caselaw holds that Article II does not require a signature when the arbitration clause is part of a broader contract.").

[90] *McDonnel Grp., L.L.C v. Great Lakes Ins. SE, UK Branch*, 923 F.3d 427, 432 n.8 (5th Cir. 2019).

[91] *Sedco*, 767 F.2d at 1146.

[92] *Johnson v. NCL (Bah.) Ltd.*, 163 F.Supp.3d 338, 361 (E.D. La. 2016) (quoting *DiMercurio v. Sphere Drake Ins. PLC*, 202 F.3d 71, 79–80 (1st Cir. 2000)).

[93] *1010 Common, LLC v. Certain Underwriters at Lloyd's, London*, No. 20-2326, 2020 WL 7342752, at *9 (E.D. La. 2020) (quoting *Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 297 (5th Cir. 2004)).

[94] Rec. Doc. 14 at 4.

Plaintiff's Broker did not receive it until March 24, 2021.[95] Plaintiff further asserts that it "was not made aware of the Arbitration Agreement."[96] Plaintiff's arguments are unpersuasive. It is undisputed Plaintiff received the Policy twenty-one months before the loss and decided to renew the Policy six months prior to the date of loss.[97] The Louisiana Supreme Court held in *Isidore Newman School v. J. Everett Eaves* that "it is [the] insured's obligation to read the policy when *received*, since the insured is deemed to know the policy contents."[98] Under Louisiana law, "[i]t is well settled that a party who signs a written instrument is presumed to know its contents and cannot avoid its obligations by contending that he did not read it, that he did not understand it, or that the other party failed to explain it to him."[99] Therefore, when Plaintiff's authorized representative *signed* the Policy and Plaintiff's Broker received it on March 24, 2021,[100] Plaintiff was presumed to have known the Policy's contents.

Even if the Court were to assume that Plaintiff did not consent to the terms of the original policy, by renewing the Policy on June 5, 2022, which contained the same arbitration clause as the Policy received by Plaintiff on March 25, 2021, Plaintiff demonstrated consent to the entire Policy, including the arbitration clause.[101] If Plaintiff took issue with the arbitration clause in the Policy, Plaintiff had the opportunity to call it into question before agreeing to renew. Accordingly, Plaintiff has failed to overcome the substantial burden of establishing the invalidity of the Policy's

---

[95] *Id.*

[96] *Id.* at 5.

[97] Rec. Doc. 16 at 3.

[98] *Isidore Newman Sch. v. J. Everett Eaves, Inc.*, 2009-2161 (La. 7/6/10), 42 So.3d 352, 359 (emphasis added).

[99] *Aguillard v. Auction Mgmt. Corp.*, 2004-2804 (La. 7/29/2005), 908 So.2d 1, 17.

[100] Rec. Doc. 1-3 at 18.

[101] Rec. Doc. 16 at 3.

arbitration clause, especially given the strong presumption in favor of arbitration that applies to arbitration clauses falling under the Convention.[102]

**B.** *Whether the Convention Compels Arbitration with Foreign Insurers*

In regard to the foreign insurers in this case, the Convention unquestionably applies,[103] compelling arbitration. As outlined above, courts within the Fifth Circuit must apply the Convention and compel arbitration when: "'(1) there is a written agreement to arbitrate the matter; (2) the agreement provides for arbitration in a Convention signatory nation; (3) the agreement arises out of a commercial legal relationship; and (4) a party to the agreement is not an American citizen.'"[104] As analyzed in the above section, all four criteria are met as they relate to the foreign insurers involved in this case. Thus, the Convention applies to the foreign insurers involved, and the arbitration clause is enforced as applied to them.

**C.** *Whether Equitable Estoppel Compels Arbitration Against Domestic Insurers*

The more complicated question is if the principles of federal equitable estoppel are warranted as applied to the domestic insurers involved in the Policy, thereby allowing them to

---

[102] *See Mitsubishi*, 473 U.S. at 638–40; *see also Carter*, 362 F.3d at 297. Plaintiff additionally advances that the arbitration clause contained within the contract reflects a term of adhesion because the term was concealed and Defendants had superior bargaining strength. Rec. Doc. 14 at 7. The Louisiana Supreme Court outlined the following factors in assessing whether a contract is so adhesionary as to be unenforceable: "'(1) the physical characteristics of the clause; (2) the distinguishing features of the clause; (3) the mutuality of the clause, in terms of the relative burdens and advantages; and (4) the relative bargaining strength of the parties.'" *Edenborn Office Owners Condominium Ass'n v. Certain Underwriters at Lloyd's London,* 2023 WL 8258129, at *5 (E.D. La. 2023) (quoting *Aguillard*, 908 So.2d at 9). Arbitration clauses are common in insurance contracts, and Plaintiff has not demonstrated the clause was hidden or in a different font or size as surrounding provisions. *See* Rec. Doc. 6-3. Plaintiff argues Defendants achieved superior bargaining power "by beginning effecting Coverage [on] the Property on March 5, 2021 but withholding the full terms and conditions from Plaintiff." Rec. Doc. 14 at 8. However, as outlined in this section, Plaintiff renewed the contract well after March 5, 2021, meaning, if Plaintiff was unhappy with the arbitration clause, Plaintiff could have switched to a different insurance provider. Plaintiff has not demonstrated unequal bargaining power.

[103] *See, e.g., ADK Plaza-Centrum, LLC v. Ind. Specialty Ins. Co.*, 740 F.Supp.3d 485, 489 (M.D. La. 2024) (finding, without debate, the Convention applies to foreign insurers involved in a Policy even when domestic insurers are present as well).

[104] *Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 339 (5th Cir. 2004) (citing *Francisco v. STOLT ACHIEVEMENT MT*, 293 F.3d 270, 273 (5th Cir. 2002)).

compel arbitration as well. Plaintiff argues the agreements with the domestic insurers are separate contracts not covered by the Convention, and federal equitable estoppel principles do not apply to compel arbitration as to the domestic insurers.[105] Defendants argue the doctrine of equitable estoppel should apply to compel arbitration as to the domestic insurers because Plaintiff fails to differentiate between the domestic and foreign insurers' conduct in the Complaint, assigning its loss to all Defendants through a single claim.[106] Defendants' argument is supported by Fifth Circuit caselaw, which examines whether Plaintiff alleges "substantially interdependent and concerted misconduct" by foreign insurers and domestic insurers by looking to the Petition, and allowing federal equitable estoppel to compel domestic insurers to arbitrate when their foreign counterparts arbitrate when that showing is made.[107]

However, Plaintiff urges that a new case handed down from the Supreme Court of Louisiana changes the landscape. Plaintiff relies on the recent opinion in *Police Jury*, holding a domestic insurer may not use federal equitable estoppel principles to enforce arbitration via a foreign insurer's policy.[108] As a result of this decision, Plaintiff argues, Louisiana law outlawing arbitration clauses in insurance contracts applies to contracts any plaintiff may have with domestic insurers.[109] Thus, for the domestic insurers involved in this case, Plaintiff argues compelled arbitration is improper.[110]

---

[105] Rec. Doc. 27 at 3.

[106] Rec. Doc. 6-1 at 12–14.

[107] *Kronlage Family Ltd. P'ship v. Indep. Specialty Ins. Co.*, 651 F.Supp.3d 832, 841–42 (E.D. La. 2023).

[108] Rec. Doc. 27 at 2.

[109] *Id.* at 3–5.

[110] *Id.*

It is no secret the Louisiana Supreme Court's decision in *Police Jury* conflicts with the Fifth Circuit's holding in *Bufkin.* In *Bufkin*, the Fifth Circuit was presented with a policy listing ten insurers, a mix of both domestic and foreign, wherein the contract stated the plaintiff was entering separate contracts with all insurers, just like in this case.[111] The *Bufkin* Court followed the reasoning in *Grigson*, where the Fifth Circuit held if "the signatory to the arbitration agreement . . . raises allegations of substantially interdependent and concerted misconduct by both a non-signatory (the domestic insurers) and one or more signatories to the contract (the foreign ones)," equitable estoppel should apply to the domestic insurers, allowing them to compel arbitration.[112]

On the other hand, the Louisiana Supreme Court in *Police Jury* expressly disagreed with the *Bufkin* Court, holding, in essentially the same situation, Louisiana positive law should control, specifically Louisiana Revised Statute § 22:868, which "precludes domestic insurers' use of estoppel to compel arbitration."[113] Thus, the question before this Court is whether the Louisiana Supreme Court or Fifth Circuit's rule controls. That is, does state or federal law apply? If federal equitable estoppel principles apply, arbitration can be compelled by both domestic and foreign insurers, while if state principles apply, Louisiana positive law makes compelled arbitration by domestic insurers unlawful.

Other sections of this Court have considered this question and come to varying answers. In *Certain Underwriters at Lloyd's London v. Belmont Commons LLC*, in response to *Police Jury*, the district judge held that "whether a plaintiff can be compelled to arbitrate with a domestic insurer based on the plaintiff's arbitration agreement with a foreign insurer is a matter of state law, not

---

[111] *Bufkin*, 96 F.4th at 728; Rec. Doc. 14-1 at 5. The contract states "[t]his contract shall be constructed as a separate contract between the Insured and each of the Underwriters." *Id.*

[112] *Bufkin*, 96 F.4th at 732 (citing *Grigson*, 210 F.3d at 527).

[113] *Police Jury*, 395 So.3d at 729.

federal law."[114] The Court held the Supreme Court case *GE Energy Power Conversion France SAS, Corp. v. Outokumpu Stainless USA, LLC* compels that conclusion.[115] Because Louisiana state law bans arbitration clauses, the *Belmont* Court held arbitration could not be compelled by the domestic insurers, and the domestic insurers were forced to proceed to litigation.[116]

However, as another section of this Court pointed out in breaking with *Belmont*, the Supreme Court in *Outokumpu* specifically explained "[w]e hold only that the [Convention Act] does not conflict with the arbitration agreements by nonsignatories under domestic-law equitable estoppel principles,"[117] but that it was not determining "whether GE Energy could enforce the arbitration clauses under principles of equitable estoppel or which body of law governs that determination."[118] Based on these excerpts, another section of this Court held it was unpersuaded that *Outukumpu* "dictates the conclusion that Louisiana law governs the applicable principles of equitable estoppel."[119] This Court agrees, *Outukumpu* does not assert that state law controls whether an arbitration clause can be enforced by domestic insurers.

However, with this reading of *Outokumpu*, uncertainty still exists surrounding whether state law or federal law applies to the domestic insurers. Normally, state substantive law would

---

[114] *Certain Underwriters at Lloyd's London v. Belmont Commons LLC*, 2025 WL 239087, at *2 (E.D. La. Jan. 17, 2025).

[115] *Id.* at *8 (citing *GE Energy Power Conversion France SAS, Corp. v. Outokumpu Stainless USA, LLC*, 590 U.S. 432, 437 (2020)).

[116] *Id.* The *Belmont* Court further held a discretionary stay of litigation was not warranted considering the plaintiffs had been attempting to resolve the suit for years and there existed no guarantee a future decision in the case could unduly influence a decision in the arbitration proceeding. *Id*. at 10.

[117] *Parish of Lafourche v. Indian Harbor Insurance Company, et al.*, 2025 WL 754333, at *9 (E.D. La. Mar. 10, 2025) (quotations and citations omitted)

[118] *Id.* (quotations and citations omitted).

[119] *Id.*

apply when there is no federal question. The Supreme Court in *Boyle v. United Technologies Corp.* created a two-part test to determine when *federal* common law, rather than state law, should apply in situations where state law would normally control.[120] *Boyle* held displacement of state law with federal common law should occur "only where a 'significant conflict' exists between an identifiable federal policy or interest and the operation of state law, or the application of state law would frustrate specific objectives of federal legislation."[121] First, courts must determine if a case presents a uniquely federal interest necessitating application of federal common law, and second, courts should assess whether the application of state law conflicts with or frustrates specific objectives of federal legislation.[122]

In a concurring opinion in the Eleventh Circuit, Judge Tjoflat explained there is a "quintessential uniquely federal interest[]" in applying federal common law principles of equitable estoppel in cases that involve the Convention.[123] Judge Tjoflat opined the "whole goal of the [Convention] is to standardize the enforcement of international arbitration agreements, and there is a strong federal interest in making sure that the United States lives up to its treaty obligations."[124] This aligns with Supreme Court precedent acknowledging a strong "federal policy in favor of arbitral dispute resolution . . . that applies with special force in the field of international

---

[120] 487 U.S. 500, 506-07 (1988).

[121] *Id.* at 500.

[122] *Id.* at 507.

[123] *Outokumpu Stainless USA, LLC v. Coverteam SAS*, 2022 WL 2643936, at *6 (11th Cir. 2022) (Tjoflat, J., concurring).

[124] *Id.* (citations omitted).

commerce."[125] Thus, a unique federal interest exists in faithfully applying the rules of the Convention in cases that involve foreign insurers, which includes abiding by arbitration clauses.

As Judge Tjoflat explains next in his concurring opinion, "allowing each state or international law to impose its own test for threshold questions of arbitrability would create an unmanageable tangle of arbitration law in the United States, lead to forum shopping, and frustrate the uniform standards of the [Convention] and Chapter 2 of the FAA were enacted to create."[126] In Louisiana particularly, state law presents a clear hurdle to the unique federal interest of faithfully applying the Convention. According to Louisiana Revised Statute § 22:868, which outlaws the enforcement of arbitration clauses, domestic insurers would be forced to litigate claims pending against them, while claims against foreign insurers would be subject to arbitration under the Convention. Litigation between domestic insurers and plaintiffs could influence the arbitration between foreign insurers and plaintiffs, and vice versa. Applying the Louisiana statute banning arbitration, therefore, stands to frustrate the purposes of the Convention—to provide for the arbitral resolution of disputes and for the United States to faithfully live up to that obligation. Even if litigation were stayed until the resolution of arbitration, piecemeal litigation would fly in the face of the uniformity the Convention demands. Thus, especially in Louisiana, no matter if a stay is granted, application of state law would frustrate the goals of federal legislation.

The *Boyle* test is therefore satisfied, and federal common law applies to the situation before the Court. This leads to the conclusion *Bufkin* applies, which instructs courts in the Fifth Circuit that federal equitable estoppel principles can be used to compel arbitration as to domestic insurers

---

[125] *Mitsubishi*, 473 U.S. at 615.

[126] *Outokumpu Stainless USA, LLC v. Coverteam SAS*, 2022 WL 2643936, at *6 (11th Cir. 2022) (Tjoflat, J., concurring).

when foreign insurers are required to arbitrate under the Convention.[127] *Bufkin* reaffirmed federal equitable estoppel principles outlined in *Grigson*, where the Fifth Circuit found the district court did not abuse its discretion by compelling arbitration through equitable estoppel principles because the signatories and non-signatories to the arbitration agreement were charged with "interdependent and concerted misconduct."[128] Accordingly, *Bufkin* held that when a foreign insurer compels arbitration under the Convention, if interdependent and concerted misconduct is asserted, arbitration can properly be compelled by the domestic insurers involved in a policy as well.[129]

    *Bufkin* further explained that Louisiana Revised Statute § 22:868 does not come into play when parties are subject to the Convention through equitable estoppel, and that this outcome is not contrary to Louisiana public policy because the Convention is an exception to Louisiana's general bar on arbitration clauses.[130] Thus, in this case, where foreign insurers can compel arbitration under the Convention, federal equitable estoppel principles apply to the domestic insurers and whether they are permitted to compel arbitration if interdependent and concerted conduct on behalf of the foreign and domestic insurers is alleged.

    In *Kronlage Family Limited Partnership v. Independent Specialty Insurance Company*, this Court held allegations of substantially interdependent and concerted misconduct exist when a plaintiff does not differentiate between defendants. This Court honed in on language the plaintiff used in the Petition like alleging the defendants "collectively insured" the property at issue.[131]

---

[127] *Bufkin*, 96 F.4th at 732.

[128] *Grigson*, 210 F.3d at 530–31.

[129] *Bufkin*, 96 F.4th at 732.

[130] *Id.* at 732–33.

[131] 651 F.Supp.3d 832, 842 (E.D. La. 2023).

Here, Plaintiff does not differentiate between Defendants at all in the original Petition removed to this Court.[132] After listing each individual Defendant in the Petition, Plaintiff refers to them collectively as "Defendants" throughout.[133] Plaintiff claims "Defendants" were notified of the loss of Plaintiff's property, that "Defendants" paid a total of just under $2 million to Plaintiff, and that Plaintiff made amicable demands to "Defendants" with no resolution.[134] Considering these charges against the collective "Defendants," clear allegations of concerted and interdependent conduct were made between the foreign insurers involved and domestic insurers. Thus, federal equitable estoppel principles apply to the domestic insurers.

According to *Bufkin*, federal equitable estoppel principles allow domestic insurers to compel arbitration when their foreign counterparts compel arbitration under the Convention and there exists allegations of concerted and interdependent conduct.[135] Based on this Court's finding that concerted and interdependent conduct was alleged, arbitration can properly be compelled by both the domestic and foreign insurers who issued the Policy to Plaintiff.

**D.    *Stay of Litigation***

Having determined Plaintiff's claims must be submitted to arbitration with both the domestic and foreign insurers involved in the Policy, this Court must next determine whether to stay litigation pending arbitration, as Defendants request.[136] As the Fifth Circuit noted,[137] Section

---

[132] *See* Rec. Doc. 1-1.

[133] *See id.*

[134] *Id.* at 5.

[135] *Bufkin*, 96 F.4th at 732.

[136] Rec. Doc. 6 at 2.

[137] *Cure & Associates, P.C. v. LPL Financial LLC*, 118 F.4th 663, 671 (5th Cir. 2024) (noting, under Section 3 of the FAA, district courts are directed to stay litigation when a claim in a lawsuit is referable to arbitration under an arbitration agreement and one of the parties requests a stay).

3 of the FAA directs district courts, when claims are properly referable to arbitration, to stay the trial of the action until the arbitration is complete upon application of one of the parties.[138] Accordingly, a court may not deny a stay when a valid arbitration agreement falls under the Convention and a party requests a stay. Therefore, litigation is stayed in this case pending arbitration.

## V. Conclusion

For the reasons discussed above, this Court grants Defendants' motion to compel arbitration as to the foreign and domestic insurers, and additionally grants Defendants' motion to stay the proceedings pending arbitration.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion to Compel Arbitration and Stay Proceedings[139] is **GRANTED**. The above-captioned case is **STAYED** and **ADMINISTRATIVELY CLOSED** pending arbitration.

**NEW ORLEANS, LOUISIANA,** this 20th ___ day of March, 2025.

*Nannette Jolivette Brown*
_____
**NANNETTE JOLIVETTE BROWN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

---

[138] 9 U.S.C. § 3.

[139] Rec. Doc. 6.